v. USA, Inc. v. BIC, Consumer Products Manufacturing Company, Inc., Part A, Class of C, 15 minutes for side, Mr. Mattingly for the appellant. And Mr. Mattingly and the other appellants, if you reserve time, tell me what you've asked for so I know to call up on you if you would, please. Yes, Judge, we've requested three minutes for rebuttal. Please proceed. May it please the Court, Mr. Stouffer, this case involves a then three-year-old child who was severely burned when he ignited his clothing with a cigarette lighter after the child's safety mechanism was removed from the lighter. The child's guardian sued BIC USA, who was the manufacturer of the cigarette lighter, involved claiming that the lighter was unreasonably dangerous because the child-resistant feature on the lighter was easily deactivated or overridden in violation of federal cigarette lighter safety standards. After a jury found for BIC in the Western District of Kentucky, the conservator now respectfully requests this Court to vacate the jury's verdict and remand the case for a new trial. The primary issue for consideration by this Court is whether the trial court erred in permitting highly prejudicial testimony from a former top official of the Consumer Product Safety Commission to the effect that the commission, the agency charged with regulating the safety of cigarette lighters, had never cited BIC for a deficiency in this design, had never requested BIC to redesign the lighter, and had never issued a recall of the particular product that was involved, thus implying that the commission had determined that the cigarette lighter in question and the design of that lighter and its child safety mechanism was safe and non-defective. Mr. Mattingly, let's get right to the heart of this 2074B claim. It appears to me that nobody in this case has focused on the specific language of the exclusion itself, where it says, shall not be admissible in evidence and litigation, and then it goes on to say, at common law or under the state statutory law relating to such consumer product. This statute on its face doesn't exclude any evidence about the failure of the commission to act or not act in connection with the federal claim. In this case? So you're bringing a federal claim and you're bringing a state claim. Arguably this statute, depending on how you interpret it, which is the source of all the might limit that evidence under the state law claim or the state common law claim, but it doesn't limit it under the federal claim. Well, Judge McKeague, two things. You're right. There were both state and federal claims that were asserted at the trial of this action, and even if arguably the statute does not apply to cases that are brought under the federal claim, that evidence still has got to be relevant. It's still got to be admissible under rules 402 and 403, and in this case, where there was no activity, no evidence of any activity by the commission with respect to this specific product defect, even if you look at... You didn't make a relevance argument outside the face of 2074B, did you? Well, the argument with respect to 2074B does go to relevance, because if there is no activity by the commission with respect to this specific product defect, then any evidence that's brought in to try to infer that there has been approval by the commission is not relevant, because there's no basis for the connection between that evidence and the product defect involved. Let me put it another way. Your whole relevance argument is predicated on this clause that I just read you under 2074B, is it not? The relevance argument is predicated under 2074B that says that if the commission... So if 2074B doesn't apply, at least with respect to the federal claim, then do you have an argument left? Sure, because it should not have been admitted under the federal claim, or excuse me, it should not have been admitted under the state claim, and it shouldn't have been admitted at all, even if 2074 was not applicable, because it would not have passed the relevancy provisions of 402 and 403, and even if it was admissible for the limited purpose of the federal claim, then the plaintiff would have been entitled to a limiting instruction advising the jury that they could not consider that same evidence on the state law claim. Instead, the instructions in this case advised the jury, even in the state claim, that they should consider that evidence, even though it was not determinative, that it was a factor that they should consider. I know you objected to the instruction overall, but you did not object to, on the basis of the language of the statute, you didn't ask for a specific limiting instruction that says even if it is admissible under the federal claim, it's not admissible under the state law claim. We had actually asked that it not be admissible under either claim, and the court ruled that it was going to be admissible for all purposes. And at that point, we did ask the court in both of those instructions to at least advise the jury that that evidence was not determinative of the issue, that it was not relevant. You got that instruction. We did get that instruction. We did get that instruction. But the specific issue— So bottom line, do you agree or do you disagree that at least in terms of the language of 2074B, subject to your separate relevance argument, that there is nothing in 2074B that precludes any evidence of the failure of the commission to act to be utilized in connection with your federal law claim? If it's relevant. I would agree that 2074B does have language that says that that— Why would Congress pass a statute that deals with the failure of the commission to take any action or commence any proceeding if, by definition, it's not relevant anyway? Well, it's not by definition not relevant because if you look at the evidence in this case where there is no activity at all in regard to the consumer defect in question, if you look back at the Honda case, I mean, there was no action taken there, no affirmative action taken there, but there was activity that was directed to the specific product defect involved in the Honda case. You understand the statute doesn't extend itself to specific product defects. The statute extends itself to consumer products, not specific components of products, not defects in products. I understand that statute is not that specific, but if you look at what Congress must have by that statute, and looking, for example, in the appendix to the briefs, BIC has provided to the court a copy of a recall notice of a lighter that was recalled because that lighter did not have a child-resistant feature at all. It took two years for the CPSC to issue that recall notice, and if a child had been injured by that defective product and a lawsuit filed against the manufacturer of that product within that two years before the recall was issued, under BIC's interpretation of 2074B, that manufacturer would have been able to put on proof that this product must not have been defective because at this point the commission has never recalled, never cited the manufacturer, never asked for a redesign of that product. Surely Congress was not intending by 2074B to permit a manufacturer of that, which clearly was a defective product, to rely upon the shield of CPSC-inferred approval to defend a product liability claim. 2074B, in order to further the purpose of the Consumer Product Act, has to be interpreted as not providing a manufacturer a shield behind CPSC non-action where there's been no consideration of the particular product defect at issue. Otherwise, that defective product that was recalled two years after it started to be sold would have been able to rely on the powerful evidence that if there was something wrong with this product, the CPSC would have done something about it by now. And that's the interpretation that BIC wants to place on 2074B. And I understand that the statute does not say as to that specific product defect, but it certainly can be read broadly enough, and when considering what evidence has got to be relevant to the issues that are involved in a product defect case, to go to that particular issue, to go to the issue of the product defect itself, because otherwise you get this powerful evidence in, and in that case, where the product recall was made two years after it started to be sold, the manufacturer gets this huge benefit by trying to be shielded by the Commission's non-action before a jury trying to determine whether a product is defective or not. And surely Congress didn't intend 2074B to be a shield for a manufacturer of a defective product in that regard. And I understand that the language of 2074B is not crystal clear. Every court, this court and the court in Maine who interpreted it, indicated that it was in many respects ambiguous, but the only interpretation that appears to be consistent with the purpose of the Consumer Protection Act would be one that would not provide the manufacturer of a defective product a shield behind the non-action of the CPSC, and that's what we had here. We had a circumstance where the Commission had never even considered the product defected issue, and yet BIC was able to introduce evidence that the jury should presume that the product was non-defective, because if it had been, then the Commission would have done something by then. Do you have any case that addresses or uses language like you're using it that says the Commission not only has to have considered the consumer product, but has to have addressed the specific consumer product defect that's at issue in the lawsuit? I have no case that says that, Your Honor, and as far as I know, the only two cases that deal with 2074 with any substance are the two cases that are relied upon by both BIC and that are analyzed by us. In these cases, Your Honor, and in this case in particular, where the standard is if error was made, if this court must be fairly assured that that error did not affect the outcome of the jury, the outcome of the case, then certainly in this case, where evidence as powerful as that, that had no basis, there simply was no activity by the CPSC with respect to that product. And if you interpret 2074 that broadly, then certainly that's not consistent with what the Consumer Product Act is intended to protect, and that is to reduce injuries to our citizens as a result of defective products. BIC's expert is a former CPSC investigator? He actually was a higher-ranking official than that. I believe at one point he was the deputy commissioner. He was not the commissioner at the time that these actions took place, and actually was expressing opinions based upon information that had been given to him by BIC, not from an independent review of the commission's record itself. And how long had he been gone from the commission? By the time of the trial? Yes. It's my recollection that he had been gone by that time for some eight or ten years, and had spent his career thereafter consulting with the companies that previously he had regulated as deputy commissioner of the commission. And yet he purported to offer opinions on current meaning of correspondence with the CPSC, correct? Yes, he did, over our objection. Thank you, Your Honors, and we would respectfully request that the jury's verdict be vacated and a new trial be ordered. Thank you. May it please the Court, Mr. Mattingly. Your Honors, this case involved the challenge of a BIC lighter in its design, particularly with regard to the design of the child-resistant safety shield. The matter was tried for two weeks before a jury, and during that two weeks, we heard evidence from some twenty-five different witnesses, experts on both sides. And the jury determined, after that trial, that the product was not unreasonably dangerous, and that it did not violate the CPSC Section 1210.4, in that it was not easily deactivated or overridden. The contention in this appeal is that the judge improperly allowed two or three questions of Mr. Marchica, a former Acting Executive Director of the CPSC, who had only been retired from that commission for a relatively few number of years, two to four is my recollection. And Mr. Marchica simply stated, based upon records in his review of the entire file at the CPSC, that the CPSC had never recalled, had never required an investigation into the BIC lighter, nor had there been any recall or request that BIC redesign the child safety shield. In this case, Judge McKinley considered motions to exclude that evidence on two occasions before the trial. Specifically, it was briefed, and at a pretrial conference, it was orally argued. And on both occasions, Judge McKinley ruled, first, in an opinion on the topic, and secondly, re-adopted that opinion in a ruling shortly before the trial, that this evidence was admissible. The same arguments that had been made to this Court were once again submitted to Judge McKinley in post-trial motions for a new trial, and they were denied again. It was not something that Judge McKinley did not consider, and that was not presented to him as has been presented to this Court today. But nevertheless, Your Honors, our position was then, and is now, that there was indeed action by the CPSC with regard to disposable cigarette lighters. In the testimony of Mr. Marchica, he- Again, you want to define action or inaction as broadly as possible. He wants to define it as narrowly as possible. Already discussed with Mr. Mattingly, his statements about they'd never taken action with respect to the specific product defect, that's of course not what the statute says. You seem to argue that if they've ever considered any disposable cigarette lighter anywhere, any time, that means they've consciously decided not to regulate the version of the cigarette lighter here at issue. And that can't be any more correct than his argument. Well, sir, with all due respect, I think the facts in this case go beyond that simple broad application. In fact, not only did the CPSC enact regulations, a nurse coincidentally in Louisville, Kentucky in 1985 wrote a short letter to the CPSC asking that it look at the issue of the dangers of little children. The CPSC spent some nine years holding hearings, accepting position papers, doing their own investigation, and in 1994 issued 16 CFR section 1210, some 45 pages of regulations. Specifically, with regard to the BIC lighter, in 1995, January of 1995, within just a few months of the effective date of those regulations, BIC submitted all of the reports, including exemplar lighters, the specifications, the drawings, and the child testing reports required by that chapter under 1210. Specifically, in early 1995, the CPSC issued a document in which they accepted BIC's filings as complying with all of the sections of 1210, including the particular section. They checked it, and it's in the appendix. They checked that the BIC lighter that was submitted in 1995 met the requirement that it not be easily deactivated or overridden. That was the one-piece or the two-piece guard? That was the one-piece. And accordingly— So let's assume you changed it from the one-piece guard to the two-piece guard, and for whatever reason the two-piece guard was completely ineffective. Your Honor— I'm not asking you to concede that, but I want you to assume that for purposes of the question. You seemingly are saying, well, gee, they looked at—you're either saying they looked at disposable lighters in general, so therefore we're okay, or they looked at disposable lighters with a one-piece guard, so therefore we're okay. But his argument is, wait a minute, you changed the guard. They hadn't looked at the one with the two-piece guard. So how do we address that? The answer to that is a factual matter that was proven at trial. What was proven at trial was that under 16 CFR 1210.14a, the regulations provide that when the manufacturer develops a lighter design that was submitted, and it subsequently develops, quote, another model of lighter that differs from the first model only by differences that would not have an adverse effect on child resistance. When we switched the design from the one-piece to the two-piece, it had absolutely no effect adversely on the child-resistant characteristics of the lighter. There was no evidence presented by anyone that that was not true. So why'd you do it? We did it because of the materials in the one-piece where it was affixed at the top. It was a low-carbon steel design because of the complexity of the manufacturing of the part, and the low-carbon steel had to be tempered to create the necessary hardness. There were some inconsistencies. Some were too easy to depress. Some were too hard to depress. And in order to cure that design specification issue, to get more conformity, we switched to the two-piece, which was affixed in the chimney, the plastic body of the lighter, and not affixed at the top. The specifications for deflection, that is the amount of distance that the child-resistant shield had to be pushed down, and the force to push it down, remained the same between the one-piece and the two-piece. So you're saying that the plaintiff didn't offer any evidence that addressed itself to the switch in design, making it more easy to disengage or disable the safety device? Well, that was always their contention, and they attempted to prove that. The point that I'm making to— I understand that. You said there was no evidence whatsoever that that changed design made it less safe. They just offered no evidence whatsoever on the principal underlying claim here? No one testified that the change between the one-piece and the two-piece changed the deflection distance nor the amount of force. Those were the child-resistant characteristics that were identical in both designs. Now they argued with the jury, obviously, that they think that the one-piece was a better design. But in fact, no one said that we should have resubmitted testing when we went to the two-piece because the deflection distance and the force were different. Maybe I'm missing something here, which demonstrates the fact that I don't smoke, so I don't use lighters. This deflection distance and the force are features that—I'm assuming that make it so that a child can't actually activate the lighter. Yes. The claim here doesn't go to that, as I understand it. The claim goes to whether that feature, whatever it was, was easily removable. And I thought their claim was that it was easier to remove the two-piece design than it had been to remove the one-piece design. That was certainly a contention. Now, did they offer evidence on that? They did offer evidence on that, and we offered evidence— The rule that they are saying you violated, which was you made a change that made it easier to take it off, as opposed to you made a change that made it easier for a child to light the lighter. Your Honor, the difference is twofold. Number one, we're talking about adults as compared to children. The difficulty for a child to remove or to light the lighter between the two-piece and the one-piece, it was more difficult for a— Is the testing geared toward children, though? It is. It is geared toward children. And the contention here was that they wanted us to make a lighter that was fail-safe, that an adult with an intent and a tool could not defeat it or deactivate it. No one has ever been able to design such a lighter. That was undisputed. An adult with a tool can deactivate and override every cigarette lighter on the market. You know, with all due respect, Mr. Stoffer, it seems to me you just keep redefining the law and the claims every time we ask you questions about this. They might have liked the law to be that it's fail-safe, but they're claiming that this lighter violates the regulations that it not be easily overridden or deactivated. That's a far cry from being fail-safe or can't possibly be deactivated. Well, the fact of the matter is, Your Honor, that they made that argument and presented evidence to that effect. We countered that with proof that it is not easily deactivated or overridden, and the jury accepted that evidence. We got that, but you're ignoring their underlying claim here that the scales were improperly marchika opinions about whether or not there had been any regulatory activity with respect to this product. So you first said product was any disposable lighter, then you reluctantly narrowed it down to maybe the Bic lighter, but it seemed to be we only narrowed it down to the one-piece design. Well, Your Honor. How do we address the specific question here, not the rephrasing of yours, the specific question about whether there was error in allowing this testimony in connection with the two-piece design? In the year 2006, Your Honor, we proposed to the CPSC a slight reduction in deflection distance and force. We submitted, again, testing in the year 2006 on the two-piece, and that was accepted by the CPSC. Accepted in what form? Accepted in the form of the letter that we received that is in evidence in 2006, in which the CPSC accepted our specifications, the exemplars, the child testing. They basically acknowledged receipt of it, didn't they? Well, sir, I think it's more than that. They did not. But also, more importantly, did that occur before or after this incident? It was two years after the accident and some six years before the trial, and there was no finding by the CPSC that we had improperly submitted data or that we had withheld data. Just out of curiosity, you still make this two-piece design? Same one today. Has it ever been found by the Commission to violate any safety rules? And as the record in this case reflects, BIC Controls has a market share of 85%. We make and sell 250 million of these lighters per year. And since the time of the submission in 2006, there have been well over 1.5 billion lighters sold with this design. It is still the same design today. What evidence in the record leads you to believe that the jury found that this was not your client's lighter used to start the fire? Certainly there was clear evidence that there were no clear chain of custody of this lighter. And our- General verdict, was it not? It was. No interrogatory? No. And as a result, it's equally consistent that the jury determined that the lighter that was involved in this incident was not a BIC lighter. I see that my time is up. I appreciate it. Thank you, Your Honors. Thank you. Thank you, Your Honors. In rebuttal, I would like to make about three points. One is the argument that Mr. Stouffer makes that under 1210.14, that if the modification in the lighter design did not affect the proficiency of the lighter to keep a child from operating it, that there was no new reporting that was required. And Mr. Stouffer ignores Section B of that very same regulation. A says you don't have to go through new qualification tests to show the proficiency of the lighter to prevent operation by a child if that doesn't change. But Section B says that if your change in the design would adverse- may adversely impact your compliance with any other part of the regulation, then you are required to go back and do new testing. That's Section B. We have never argued in this case that the two-piece lighter was less difficult for a child to operate. Our claim has always been the section of the regulations that were violated had to do with the change that made an adult user more likely to disable that, because it was easier to do so. Just out of curiosity, and I don't know what I would do with this information other than If there really are 1.5 billion of these disposable lighters out in the field with this two-piece child safety feature, has any court or any agency ever found it to be defective under these regulations? Not that I'm aware of. I'm not aware of it ever being presented to any agency in requesting an evaluation of that particular item. Surely there have been other court cases. I am gathering that these things get removed, whether easily or otherwise. They certainly do. And BIC acknowledges that it knows that. And the father here said he removed them from every lighter he had. And there was evidence from other witnesses that they removed them. And there was evidence that BIC knew that a percentage of their users intentionally removed the child safety device to make it easier to operate. So we start from the premise they clearly are removable. Nobody apparently disputes that. You're not saying that they need to be absolutely unremovable, are you? That's correct. So we're somewhere in this murky area in the middle about whether it's easily removable. And I'm just curious, are there any other cases that address whether this particular design was easily removable? I don't know of any reported cases. I don't know whether there are any other cases that have been filed or claims that have been made. But there are no appellant decisions that deal with that specifically. The other two points I would make briefly, and we made these in our arguments. There was no substantial evidence in this case that this was not the lighter that was used by this child on that particular date. And we've cited that in our briefs. And so that argument, I think, should be rejected. And the other thing and the other point that I want to make is the standard that Mr. Stouffert has claimed for reversal in this case is incorrect. He cites the American Honda case and the language there when, in fact, back to the Beck case in 2004 and recently the Kendall versus Local 17 case, the standard has always been whether or not this court can say with fair assurance that the outcome of the trial was not affected by the evidentiary error. That's the standard. And with that standard, we believe that this case should be returned for a new trial in the district court. Thank you, Your Honor. All right. Thank you. It's an interesting case.